may be seated. And the clerk will call the next case. Mr. Mallon, you may proceed. Good afternoon, Your Honor. Thank you very much. My name is Daniel Mallon. I'm with the State Appellate Defendant's Office and represent Mr Little. The only issue here today is whether Brandon Little was seized in violation of his Fourth Amendment rights when he was pulled over on a suspicion of trespassing. The first threshold question is, was this, in fact, a seizure? And if it was, the second is, was there a reasonable, articulable suspicion that he actually committed a trespass so as to justify that stop? So as to the first question, was there a seizure? The trial court, of course, testimony below from both Little and Officer Pallott, who pulled him over, found that this was a non-consensual stop. And we're asking this court to affirm that ruling, of course. Pallott repeatedly testified that he was trying to stop Little and pull him over, and he was trying to do so by shining his flashlight on and off. What do you mean, pull him over? He was already stopped, wasn't he? No, there The testimony is somewhat unclear, but they were both in their cars. The officer was in the complainant's truck, because his squad car couldn't get to the area at issue. And the officer, while he was in the complainant's truck, pulled up behind him. They were approaching the land. Little was approaching the opposite direction. They saw that he had a dog box, so they turned around to follow him, pulled up to him. He approached the stop sign. The officer testified that he shined his flashlight on and off in order to get him to stop and pull over. He did this because he saw that it was a dog box. Little testified that he saw the flashlight shining on and off. He said it was like a strobe light. He thought it was the game warden, and that's why he got out of the truck. At that point, Pallott got out of the complainant's truck, immediately approached Little, identified himself, said, I'm investigating a trespass. And that's when he asked for the license, and Little said his license was revoked. So the test is whether an objective, reasonable person in those circumstances would feel free to just terminate the encounter and decline to talk to the officer, the uniformed officer, and just drive away. Was there a hunting dog in the cage? Yeah, yes. And it was about coon dogs going after coons on whether it was a trespass on somebody else's property. That's what he was investigating. Correct. The complainant was in the car, the truck. Yes. They turned around when they saw the dog cage in the truck. Yes. And then shined the flashlight, stopped him to pull him over. And the guy said he was on somebody else's property. Yes. He said he was on someone else's property. And he said, in fact, a traffic stop. So we submit that, yeah, it was a traffic stop. No person in Little's position would have felt free to just leave at that point. But then the question is, was there a reasonable, articulable suspicion for the stop? And we submit no. And first and foremost, it's because there was never any evidence that there was any trespassing signs on the land or property. See, that's what I don't understand. Your argument wasn't good. This is not a trial on trespass. Yes. This is if there was probable causes to make a stop. Reasonable suspicion to stop, yes. But it's our position that you have to establish, no, this is a central element. I mean, your brief suggests that you have to prove all the elements of the crime before you can make a stop, or have all the elements of crime there. Our argument is you have to have reasonable suspicion of the critical elements of an offense. So when you get a call as a police officer under your theory, you have to go out and check to make sure all the posted signs on a trespass. You have to make sure there's all posted signs and all that before you do any further investigation. You have to go down the checklist of what you need for a trespass. Well, notice is one of the central elements of a trespass. So it's our argument that in order to stop someone for a trespass, you have to have at least some evidence that there was notice given, either in the form of no trespassing signs, or actual notice given by the complainant. I mean, in this case, the could have asked him, do you have no trespassing signs up, or have you given notice that people can't be on your property? And at that point, if the complainant had said no, he would just say you have to put up no trespassing signs, there's nothing I can do in this case. This is basically the same thing. There was no evidence presented that there was ever any evidence of trespass, so that's why we think this is the case. Oh, they charged him with something else. They charged him with driving under a revoked license. They didn't have the vehicle on him when he was asked to identify himself, can I see your license? He said it's revoked. Yes, correct. That's what he offered to the officer. Yes, but it's our position that the stop itself is illegal. So he was seized, he got out of the car, and the stop was illegal because without evidence of the notice, he couldn't pull anyone over on a suspected trespass because there was absolutely, there was a reasonable suspicion that a trespass had ever been committed by anyone, regardless of if it was Little or anyone else driving there. What is the time frame from when the complainant calls the sheriff to when they had this encounter? When he hears dogs barking or something, right, and is the sheriff's deputy right there, or what? The time frame is he hears dogs on his property, which is across the street from his hunting cabin. He doesn't hear any human activity, he doesn't see any flashlights or anything, all he hears is dogs. He calls in the trespass, reports the trespass to the police. The complainant then drives about three and a half miles to his residence, that's where the officer reports to, meets with him. The complainant says you're not going to be able to get there in your squad car. They get in the complainant's truck, they start driving back to the property where the trespass happened. And it's as they're driving to the property that they see Brandon Little coming in the opposite direction towards them, in the eastbound. So they don't get to the property, and by the time they find the CMO it was about half an hour from the time, to answer your question, that the trespass was reported. So this gets to our alternative argument, that even if evidence of notice was not required, considering the time that had elapsed, and the fact that he was never seen exiting the property where the reported trespass was said to have taken place, he was driving on a public road, it wasn't clear how far he was from the property when they first saw him driving on the public road. He wasn't... They were driving towards the property, he was driving away from the property. The testimony was that he was actually, they were driving west towards the property, and the testimony was that he was actually further west of the property, and it seemed to have passed the property, and then got on the east side of the property, that's when they turned around his truck, and that's when the encounter occurred. So he never saw him exit the property at issue, he never saw him on the land. They never got to the property at issue, so it's possible that there could have been, the trespassers still there with their dogs running on the land. There was testimony below that on any given night, four or five people are going to be out there running their dogs, training their dogs on the property. Well, it's not trespassing if there's no trespassing signs. So, but, I mean, basically based on the totality of the circumstances, it was far, a significant amount of time had elapsed from the time the call came in and they spotted Mr. Little. He was not on the area in question, he wasn't committing any traffic violations, so yes, he was towing a dog box, but as he was running his dogs. How many dogs were in there? Several, more than one. There were several dogs in the dog box that he was seized, the trial court correctly held that he was seized. One, there was no justification for the stop because there wasn't a reasonable suspicion that a trespass ever occurred, because there was absolutely no evidence that anyone had no notice they couldn't enter the property or that the complainant had given actual warning anyone couldn't enter the property. Even if that element, reasonable suspicion of that element wasn't necessary, we still think that there isn't enough here considering the delay in time. And what's the maximum delay in time? Half an hour? Yeah, half an hour sounds... Half an hour, right. It was a significant amount of time. Half an hour in the country. Half hour in the country. But for these reasons we'd ask this court to reverse the denial of the motion to suppress, and with that, reverse his conviction outright, because without a legal stop he wouldn't have the evidence necessary to convict, and he does have a 60-day jail sentence pending the outcome of this appeal, so we would ask this court to vacate that sentence as well. Thank you. Mr. Nicolosi? Good morning, Your Honors. May it please the court, counsel. First, the people submit that the defendant in this case was not subjected to a traffic stop that triggers any Fourth Amendment concerns. All that the deputy here did was flash a flashlight at this truck, and the truck stopped, and the defendant got out. There was no order to stop from any law enforcement officer. There was no show of authority here that would induce a reasonable person to believe that they had to stop. It's just quite simply, there was no seizure here. The people cited a couple of cases in their brief where similar shows, quote, shows of authority, end quote, referring to a flashlight do not constitute a coercive act that is akin to ordering somebody that they must comply. And again, the people would add that any testimony, any story that this defendant believed he was being ordered to stop by a police officer by the mere flash of the flashlight is incredible, because the fact is he pulled the car over and immediately stepped out of the vehicle. Reasonable people don't step out of a vehicle if they believe that they're stopped by police officers. And further, the request for a license was just that. It was a request. It was not an order to produce his license, which it could be argued would constitute a seizure at that point, something that maybe a defendant couldn't say no to. This was a mere request. Of course, Well, why would he be asking him for his license? I mean, if he's looking for somebody trespassing, why is he saying, can I see your license? I think it's been well established that a mere request for identification does not suggest official interrogation of the kind that creates a confrontational type of encounter. I believe that's been well established, that an officer may stop and briefly ask questions. But this wasn't a stop. So why? I mean, if it's not a stop, he's getting out of the car like, hey, what are you doing? Well, no, the officer was merely investigating this complaint. And as Justice Carter alluded to during counsel's argument, the officer here had full right to investigate this complaint because, again, you didn't need all the elements of trespass in order to investigate. So that kind of reasonable suspicion for that stop to exist for three reasons. Number one, there was a complaint from Stanford O'Hearn, who knows this property, his family owns this property. He gave a credible complaint that there was trespass there. And that's all the officer responded to, just this complaint. And I don't think it can be argued that the officer was not able to go meet with this man, get in this man's car, and basically just drive around. That was all that was happening here. It was the officer who got into a car with a gentleman, and they drove around. That can happen. They don't need any reasonable suspicion. They don't need anything to just drive around public property, of course. So that's all the cop needed to investigate was this complaint. Number two... And that's that they were on a public road, right? When they meet this car, they didn't see it coming out of the lane when this... Nope. Yeah, there was no evidence of any moving violation, no. So they're just on a public way, and they see a vehicle, and there's nothing wrong with a vehicle approaching them on a public way either, is there? I mean, so... Well, Your Honor, certainly that's a non-criminal act, driving from this... But the problem here is that there was a complaint that somebody was running these dogs around this part of the property, and Mr. O'Hearn was the one driving. Remember, that's a critical fact. He was very familiar with this property. He was driving this officer to the exact point where he heard these dogs. So there's no confusion. So they're going towards this area where he heard these dogs, and there's one vehicle that's driving back. Okay, that's a little suspicious. And then, as Justice Carter pointed out, there were dog boxes in the back, and Deputy Pallant testified he's familiar with these boxes. He knows what they are. And so then at that point, they turn and follow this vehicle, because again, there's nothing triggering the Fourth Amendment with turning and following a vehicle. And then they get a little closer. The deputy sees the eyes of the animal in the boxes. At that point, he decided to flash his flashlight. And again, as the people submit, that is not a coercive act from any... That's not a show of authority that would trigger any Fourth Amendment concerns. That's why the people submit this is clearly not a traffic stop. And if it is, the suspicion that this one truck is coming from the area where this complaint manifested itself, and that these dog boxes are in the back, there's animals back there, certainly the people would submit that these are facts sufficient enough to further investigate what's happening here. And for all of these reasons, again, I think it needs to be stressed that an officer does not need all of the elements of a particular offense checked off before he can investigate or even can trigger a Terry stop if this court is going to deem this a Terry stop. All of that is not needed. As Justice Carter stated, this is not a trial. All we need is reasonable suspicion. The people submit that it clearly exists here. And they would ask that this court affirm the rulings below. If there are any other questions, I'd be happy to answer them. Thank you. Mr. Malin. Thank you. Very briefly. I think in this case we can consider the subjective intent of both the officer, his testimony. He fully intended to pull over the vehicle, and that provided some insight into what occurred when he was flashing his flashlight. He flashed his flashlight in a way to effectuate a stop. That was what he was trying to do, and he succeeded, and so a stop occurred. Whether or not, and Little also testified that he pulled over because he thought it was a game warden. He flashed his flashlight in a way that made him believe that it was a law enforcement official. This testimony was heard by the trial court. He found it to be credible. There's nothing contradicting that testimony. And we should defer to the trial court on the findings of fact on the motion to suppress. As to whether he had a full right to investigate, we don't disagree that he had a full right to investigate the complaint of trespass. He was well within his right to go meet with the complainant, drive around looking and investigating the crime. But the question is, does he have a right to pull someone over and seize someone if there's absolutely no evidence of notice? Our argument, no. Granted, this is an issue of First Impression of Illinois. There are no published appellate court cases addressing this matter. But we did cite in our brief several out-of-state cases that have in fact found in order to pull someone over on a suspicion of trespassing, you do have to have some evidence of notice. So we asked this court to find guidance in those cases, and I just think it's practical and makes sense that to stop someone, implicate their Fourth Amendment rights on suspicion that they're committing a crime, you have to have some evidence of the central element of that crime. In this case, that's notice you can't be on someone's property. So again, for these reasons, unless this court has any other questions, we would just ask that you reverse the denial of the motion to suppress, reverse the conviction, and vacate his pending 16-day sentence. Thank you very much. Thank you. Thank you both for your arguments here today. This matter will be taken under advisement, and a written decision will be issued to you as soon as possible.